| | | |
|---|---|---|
| BENJAMIN S. BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-429 |
| | ) | (VARLAN/GUYTON) |
| JOE DURNIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil rights action is before the Court on the partial Motion to Dismiss [Doc. 2], submitted by defendants, Joe Durnin, the Tennessee Wildlife Resource Agency (the "TWRA"), Ed Carter, Andy Collins, and Willard Perryman, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, Benjamin S. Burton, has responded in opposition [Doc. 7] to the motion, and defendants have submitted a reply [Doc. 8] to that response. For the reasons set forth herein, and after considering the pending motion, the supporting and responsive briefs, the allegations in the complaint, and the relevant law, defendants' partial motion to dismiss [Doc. 2] will be **GRANTED**.

I.  **Facts**[1]

On or about September 5, 2010, plaintiff was on a boat with several friends on the Tennessee River during a fireworks festival [Doc. 1, ¶ 10]. Plaintiff was not the owner of

---

[1] The Court takes as true the factual allegations of a complaint for purposes of a motion to dismiss under Rule 12(b)(6). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint") (citations omitted).

the boat [*Id.*, ¶ 22]. Plaintiff and his friends docked at a restaurant located on the Tennessee River, parking the boat in a line of boats which extended out from the restaurant [*Id.*, ¶ 11]. Agents from the United States Coast Guard (the "USCG") and the TWRA informed plaintiff that the boat was the last one able to dock in the line [*Id.*, ¶ 12].

A short time later, TWRA agent Joe Durnin ("Agent Durnin") ordered plaintiff to immediately remove the boat from the boat line [*Id.*, ¶ 14]. Plaintiff told Agent Durnin that the USCG and the TWRA agents had approved the boat being in the line [*Id.*]. Plaintiff alleges that Agent Durnin "responded in a hostile manner" and told plaintiff that he was in charge of the boat line and that the line had grown too large [*Id.*, ¶ 15]. Plaintiff alleges that he then asked Agent Durnin for his name and the name of his supervisor [*Id.*, ¶ 16]. Plaintiff contacted TWRA and was told that Andy Collins ("Supervisor Collins") and Willard Perryman ("Supervisor Perryman") were the names of Agent Durnin's supervisors [*Id.*, ¶ 17].

Shortly thereafter, plaintiff was approached by a TWRA patrol boat. The two TWRA agents in the patrol boat told plaintiff that Agent Durnin had ordered that plaintiff's boat be removed immediately "or [plaintiff would] face arrest" [*Id.*, ¶ 19]. Plaintiff asked to speak with Supervisors Collins and Perryman [*Id.*, ¶ 20]. Plaintiff was told that the supervisors would not be coming to speak with him [*Id.*]. Plaintiff alleges that he then moved the boat to the middle of the river, anchored it, and that none of the occupants of the boat were in breach of any law [*Id.*, ¶¶ 21-23].

Around 1:00 A.M., the boat was approached by two TWRA boats, one containing Agent Durnin [*Id.*, ¶ 24]. Agent Durnin demanded that plaintiff produce the boat's

2

registration and shined his flashlight in plaintiff's eyes, causing "pain and temporary 'flash' blindness." [*Id.*]. Agent Durnin refused plaintiff's request to confirm the boat's registration from the number visible on the outside hull of the boat [*Id.*, ¶ 26]. Agent Durnin requested that plaintiff perform sobriety tests [*Id.*, ¶ 29]. Plaintiff refused and Agent Durnin handcuffed plaintiff and ordered him onto the TWRA boat [*Id.*, ¶¶ 29, 30]. Plaintiff was instructed to stay seated and not stand up, a position which caused plaintiff pain [*Id.*, ¶¶ 32, 33]. Plaintiff was taken to the police station and charged with public intoxication and a registration violation [*Id.*, ¶ 34]. These charges were ultimately dismissed [*Id.*, ¶ 35].

On August 7, 2011, plaintiff alleges that he was on the same boat when a TWRA boat stopped it and Agent Durnin demanded that plaintiff produce life jackets, registration, and a fire extinguisher [*Id.*, ¶ 37]. The owner of the boat complied [*Id.*]. Plaintiff alleges that Agent Durnin asked plaintiff whether he had consumed any alcohol [*Id.*]. According to plaintiff, within minutes of stopping the boat, Agent Durnin stopped another boat but did not ask the occupants of the second boat whether they could produce life jackets, registration, and a fire extinguisher [*Id.*, ¶ 38].

Following these events, plaintiff filed his complaint against the TWRA and Agent Durnin, Ed Carter ("Mr. Carter"), who plaintiff alleges to be a TWRA supervisor, Supervisor Collins, Supervisor Perryman, asserting claims pursuant to 42 U.S.C. § 1983, the Tennessee Governmental Tort Liability Act (the "GTLA"), Tenn. Code Ann. §§ 29-20-101, *et seq.*, the Tennessee common law, and for injunctive relief. Defendants then filed the instant partial motion to dismiss [Doc. 2].

3

**II.     Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" in order to "'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). "[D]etermining whether a complaint states a plausible claim is context-specific requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Nor will an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1937. Rather, a pleading must "contain either direct or inferential allegations respecting all the

material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

**III. Analysis**

    **A. Section 1983**

        **1. Official Capacity Claims**

Count I alleges a violation of civil rights, Count II alleges a failure to implement appropriate policies and practices claim, Count III alleges an excessive force claim, and Count IV alleges a false arrest claim. Counts I, II, III, and IV are all pursuant to § 1983 and alleged against all defendants. Defendants have moved for dismissal of these claims on grounds that the claims are barred by the Eleventh Amendment and because defendants are not "persons" for purposes of § 1983.

The Eleventh Amendment bars suits pursuant to § 1983 against states, state agencies, and state officials sued in their official capacities for money damages, unless the state has waived its sovereign immunity or consented to be sued in federal court. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). A suit against a state official is no different than a suit against the state itself. *Will*, 491 U.S. at 71 (stating that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). This is because in official capacity suits, the state is the real party in interest. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating that the "real party in interest in an official-capacity suit is the governmental entity and not the named official").

5

There are, however, a few exceptions to this rule. *Quen v. Jordon*, 440 U.S. 332 (1972). First, states are not immune from suits in federal court when Congress has explicitly abrogated a state's immunity. *Hoffman v. Conn. Dep't. of Income Maint.*, 492 U.S. 96 (1989). Second, states are not immune when they have consented to being sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Third, under the *Ex parte Young* exception, a state official is not immune when a plaintiff seeks prospective injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (recognizing that a state official sued in his official capacity for prospective injunctive relief is a "person" under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State").

The first and two exceptions do not apply to this case. First, the state of Tennessee has not waived its immunity under the Eleventh Amendment with respect to suits for relief under § 1983. *Berndt v. State of Tenn.*, 796 F.2d 879, 881 (6th Cir. 1986). Second, the United States Supreme Court has held that Congress did not abrogate states' immunity when it passed § 1983. *Hafer*, 502 U.S. at 25.[2] Third, the term "person" in § 1983 does not include states, state agencies, or state officials acting in their official capacities. *Howlett v. Rose*, 496 U.S. 356, 365 (1990) (stating that *Will* applies to states and state agencies).

Plaintiff seems to agree that under § 1983, "persons" do not include states, state agencies, or state officials acting in their official capacity. He argues, however, that his

---

[2]The Court addresses the *Ex parte Young* exception below.

6

Case 3:11-cv-00429-TAV-HBG   Document 11   Filed 03/20/12   Page 6 of 20   PageID #: 74

official capacity § 1983 claims should not be dismissed because Agent Durnin was not acting in his official capacity and should be treated as a "person" under § 1983. Plaintiff also argues that the "respective categorization of state versus person" as to Mr. Carter and Supervisors Perryman and Collins are factual questions to be determined by the trier of fact.

The Court disagrees.

Agent Durnin, Mr. Carter, and Supervisors Collins and Perryman, as employees of the TWRA, are state employees as defined in Tenn. Code Ann. § 8-42-101(3)(A), and plaintiff offers no law or argument as to why these state officials are amendable to suit given the above-cited law. Plaintiff's assertion that whether a "person" is a person for purposes of § 1983 is a question for the trier of fact also does not demand a different conclusion because simply stating that an issue is one for the trier of fact is insufficient to defeat defendants' argument for dismissal based on the above noted law. In sum, given the foregoing, the Court finds that sovereign immunity prohibits plaintiff's official capacity § 1983 claims against all defendants and these claims will be **DISMISSED**.

### 2. Individual Capacity Claims

Plaintiff has also alleged individual capacity claims in Counts I, II, III, and IV, pursuant to § 1983, against Mr. Carter and Supervisors Perryman and Collins based on their supervisory authority over Agent Durnin. Defendants have moved for dismissal of these claims on grounds that respondeat superior is not a basis for imposing liability on supervisory officials for actions taken by an alleged tortfeasor whom they supervise. In response, plaintiff contends that Supervisors Perryman and Collins implicitly authorized, approved, or

7

acquiesced in the conduct of the TWRA agents under their supervision and that it is a factual determination whether their inaction played a direct role in Agent Durnin's violation of plaintiff's constitutional rights

A plaintiff pursuing a claim under § 1983 must allege and prove that a defendant was personally involved in the allegedly unconstitutional activity. In this regard, defendants are correct that a simple assertion of respondeat superior liability does not constitute a theory of recovery under § 1983 for actions taken by alleged tortfeasors whom the official supervises. *See Doe v. Claiborne Ctny. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (stating that "respondeat superior is not available as a theory of recovery under § 1983); *see also Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976). The United States Court of Appeals for the Sixth Circuit has explained the standard for supervisory liability as follows:

> [T]he § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984) (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872–74 (6th Cir.1982))).

While plaintiff asserts in his response that Supervisors Collins and Perryman implicitly authorized, approved, or acquiesced in Agent Durnin's conduct, the facts alleged

8

in the complaint do not support this assertion. Plaintiff alleges that he was told by TWRA agents to move the boat, that he asked the agents if he could speak with Supervisors Collins and Perryman, that he was told by the TWRA agents that the supervisors would not be speaking with him, and that he was arrested on charges of public intoxication and a boat registration violation [Doc. 1, ¶¶ 10-31]. However, the complaint contains no allegation that Supervisors Collins and Perryman were involved, participated in, or knew of plaintiff's arrest—only that TWRA agents told plaintiff that Supervisors Collins and Perryman would not be coming to speak with him. Also, beyond the allegation in the complaint that Mr. Carter delegated responsibility for establishing TWRA policies, practices, and procedures to Supervisors Collins and Perryman, the complaint contains no other factual allegations against Mr. Carter [*Id.*, ¶¶ 9, 42]. Without more, these allegations of supervisory liability do not form a basis for plaintiff's claims against Mr. Carter and Supervisors Collins and Perryman based on their supervisory authority.

As noted above, for a defendant to be liable in a supervisory capacity under § 1983, more must be alleged than that a defendant simply failed to act. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). That is, a plaintiff must allege some sort of encouragement of, or direct participation in, the alleged misconduct. *Id.*; *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). Here, there are no factual allegations that Mr. Carter and Supervisors Collins and Perryman were involved in plaintiff's arrest, the alleged seizure, false imprisonment, or force in regard to plaintiff. Accordingly, plaintiff's individual

9

capacity claims against Mr. Carter and Supervisors Collins and Perryman, pursuant to § 1983, and based on their supervisory authority over Agent Durnin, will be **DISMISSED**.

### 3. Claim for Injunctive Relief

Plaintiff also alleges a claim for injunctive relief against all defendants. Specifically, plaintiff requests that a "temporary injunction [should] be issued to prevent the TWRA and its agents from stopping and seizing the Plaintiff without reasonable suspicion or probable cause that a crime has been committed." [Doc. 1, ¶ 6]. Defendants have moved for dismissal of this claim as to the TWRA, asserting that injunctive relief claims against a state are barred by the Eleventh Amendment, and for dismissal of this claim as to the individual defendants, asserting that in cases alleging police misconduct, there must be allegations of a persistent pattern of police misconduct to warrant injunctive relief [Doc. 3 (citing *Alee v. Medrano*, 416 U.S. 802, 815 (1974))]. In response, plaintiff contends that he has alleged at least two separate occurrences in which he was seized without probable cause or reasonable suspicion and that without the requested injunction, plaintiff will continued to be seized in a like manner. Plaintiff also contends that the fact that the charges against him were dismissed prior to a preliminary hearing "lends great weight" to his claim that he was arrested without probable cause.

The Court finds that plaintiff's injunctive relief claim against the TWRA should be dismissed. Both the Supreme Court and the Sixth Circuit have held that claims for injunctive relief against a state are barred by the Eleventh Amendment. *See Alabama v. Pugh*, 438 U.S.

781, 781-82 (1978); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 335 (6th Cir. 2000). Accordingly, plaintiff's claim for injunctive relief against the TWRA will be **DISMISSED**.

As to plaintiff's claim for injunctive relief against the individual defendants, the Court notes that under the *Ex parte Young* exception, a state official sued in his official capacity for prospective injunctive relief is a "person" under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S. at 167 n.14. In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment does not bar a federal court from enjoining a state official from enforcing state legislation that violates federal law. 209 U.S. 123, 149 (1908). Under this exception, "a federal court's remedial power . . . is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payments of funds from the state treasury[.]" *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (citations omitted). Accordingly, in connection with plaintiff's claim for injunctive relief against the individual defendants, the Court must consider:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Kallstorm v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998) (quoting *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir.1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir.1995))).

11

The Court has considered these four factors and concludes that, taken in the light most favorable to plaintiff, the allegations contained in the complaint do not support injunctive relief against the individual defendants. The Court also notes that the Supreme Court has not found injunctive relief to be appropriate where there is no persistent pattern of police misconduct. *See Allee*, 416 U.S. at 815. Here, plaintiff alleges one unconstitutional arrest [Doc. 1, ¶¶ 31, 35] and one "safety check" of a boat [*Id.*, ¶¶ 36, 37]. These allegations of one arrest and one safety stop do not constitute a persistent pattern of past violations of constitutional rights. Further, plaintiff has not shown that these individual defendants have a history of repeatedly violating individuals' civil rights and has not shown that an injunction governing how these individual officers must act in future situations is a necessary remedy.

The Court also disagrees with plaintiff's argument that because the charges against him were ultimately dismissed, this supports plaintiff's claim that he was arrested without probable cause and demonstrates a likelihood that his claim would succeed on the merits. A dismissal of charges does not, by itself, show a lack of probable cause. Further, plaintiff's allegation in the complaint that his charges were dismissed upon plaintiff's agreement to pay court costs also detracts from plaintiff's argument regarding an arrest without probable cause [Doc. 1, p. 8]. Finally, if this Court were to enjoin agents of the TWRA or the USCG from performing arrests or safety checks, such an order would pose a likelihood of causing substantial harm to others and would not be in the public interest. Accordingly, because the Court does not find the allegations contained in plaintiff's complaint, even taken as true, to be sufficient to meet the standard for ordering injunctive relief as to the individual

12

defendants. As such, plaintiff's claim for injunctive relief against the individual defendants will be **DISMISSED**.

### B. Claims Under Tennessee State Law

#### 1. Official Capacity Claims

Plaintiff also alleges pendent state law tort claims of false imprisonment (Count V), negligence (Count VI), negligent supervision (Count VII), and assault (Count VIII), against all defendants in their official capacities. Defendants have moved for dismissal of these claims because defendants contend that similar to plaintiff's official capacity claims pursuant to § 1983, these state law claims are likewise barred by the Eleventh Amendment.

In *Pennhurst*, the Supreme Court held that the "doctrine of pendent jurisdiction does not override the Eleventh Amendment." *Williams v. Com. of Ky.*, 24 F.3d 1526, 1543 (6th Cir. 1994) (citing *Pennhurst*, 465 U.S. at 121). Thus, as a general rule, the Eleventh Amendment bars state law claims against state employees in their official capacity, regardless what type of relief is sought. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). There are only two exceptions to the this rule. *Id*. First, states are not immune from suit in federal court when Congress has explicitly abrogated a state's immunity and second, states are not immune when they have consented to being sued. *Id.* (recognizing that "federal courts are simply not open to such state law challenges to official state action,

13

absent explicit state waiver of the federal court immunity found in the Eleventh Amendment.").[3]

Neither of these exceptions apply to this case. First, Congress has not abrogated Tennessee's immunity so that tort claims may be filed against the state in federal court. Second, while Tennessee has consented to being sued in other forums, such as the Tennessee Claims Commission, it has not consented to being sued in federal court for tort claims brought under state law. As the Supreme Court has stated, the waiver of Eleventh Amendment immunity must be explicit: "[I]t is not consonant with our dual system for the federal courts . . . to read the consent to embrace federal as well as state courts. . . . [A] clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found." *Pennhurst*, 465 U.S. at 100 (quoting *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)). In 1984, the Tennessee Claims Commission was established to allow individuals to file monetary claims against the State. Tenn. Code Ann. § 9-8-307. In other words, the state of Tennessee has waived its sovereign immunity so that it could be sued in this forum. *See Estate of Drew v. U.T. Reg'l Med. Ctr. Hospt.*, 121 F.3d 707 (Table), 1997 WL 441752, at *2 (6th Cir. Aug. 5, 1997). However, there is no indication that the state of Tennessee has waived its immunity to be sued in federal court:

> No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its

---

[3]The *Ex parte Young* exception does not apply to pendent state law claims against state employees in their official capacity. *See Pennhurst*, 465 U.S. at 121.

<mark>14</mark>

absent explicit state waiver of the federal court immunity found in the Eleventh Amendment.").[3]

Neither of these exceptions apply to this case. First, Congress has not abrogated Tennessee's immunity so that tort claims may be filed against the state in federal court. Second, while Tennessee has consented to being sued in other forums, such as the Tennessee Claims Commission, it has not consented to being sued in federal court for tort claims brought under state law. As the Supreme Court has stated, the waiver of Eleventh Amendment immunity must be explicit: "[I]t is not consonant with our dual system for the federal courts . . . to read the consent to embrace federal as well as state courts. . . . [A] clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found." *Pennhurst*, 465 U.S. at 100 (quoting *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)). In 1984, the Tennessee Claims Commission was established to allow individuals to file monetary claims against the State. Tenn. Code Ann. § 9-8-307. In other words, the state of Tennessee has waived its sovereign immunity so that it could be sued in this forum. *See Estate of Drew v. U.T. Reg'l Med. Ctr. Hospt.*, 121 F.3d 707 (Table), 1997 WL 441752, at *2 (6th Cir. Aug. 5, 1997). However, there is no indication that the state of Tennessee has waived its immunity to be sued in federal court:

> No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its

---

[3]The *Ex parte Young* exception does not apply to pendent state law claims against state employees in their official capacity. *See Pennhurst*, 465 U.S. at 121.

> treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

Tenn. Code Ann. § 20-13-102(a). In addition, the Tennessee Supreme Court has recognized that the state of Tennessee retains its immunity outside the Tennessee Claims Commission. *See Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000) (holding that outside the Tennessee Claims Commission, the "state retains its immunity from suit, and a claimant may not seek relief from the state" ). As previously explained, a state's waiver of Eleventh Amendment immunity in federal court must be explicit. *See Pennhurst*, 465 U.S. at 100. Thus, based upon the foregoing, the Court finds that the state of Tennessee has not consented to being sued in federal court for tort claims brought under state law.

In sum, plaintiff's pendent state law tort claims against defendants in their official capacities will be **DISMISSED**.

### 2. GTLA Claims

To the extent plaintiff has brought state law claims under the GTLA, those claims will also be dismissed. The GTLA governs claims made against counties, municipalities, and other local governmental agencies, not against the state, state agencies, or state officials. *Tenn. Dep't of Mental Health & Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975). As noted above, Agent Durnin, Mr. Carter, and Supervisors Collins and Perryman, as employees of the TWRA, are state employees. *See* Tenn. Code Ann. § 8-42-101(3)(A). Accordingly, since a suit against these defendants in their official capacities is "actually a suit against the governmental entity[,]" *Parks v. City of Chattanooga*, No. 1:02-CV-116,

15

2003 WL 23717092, at *7 (E.D. Tenn. Dec. 15, 2003), and because the state of Tennessee, as sovereign, is immune from suit, plaintiff's claims against these defendants under the GTLA will be **DISMISSED**.

### 3. Individual Capacity Claims

Plaintiff also alleges his pendent state law tort claims of false imprisonment (Count V), negligence (Count VI), negligent supervision (Count VII), and assault (Count VIII), against the individual defendants in their individual capacities. Defendants have moved for dismissal of plaintiff's false imprisonment claims against Mr. Carter and Supervisors Perryman and Collins for failure to state a claim; moved for dismissal of plaintiff's negligence and negligent supervision claims because the individual defendants are immune from negligence claims; and moved for dismissal of plaintiff's assault claim against Mr. Carter and Supervisors Perryman and Collins because plaintiff has failed to allege sufficient facts for which relief may be granted. In response, plaintiff asserts that Agent Durnin was acting outside of his official capacity as a state official when he removed plaintiff from his boat and detained him, that the TWRA agents was not authorized to arrest plaintiff, and that the role of the other defendants, and whether they knew of plaintiff's request to speak with them, is to be ascertained by a trier of fact.

#### a. False Imprisonment

The elements of the tort of false imprisonment, or false arrest, are "(1) the detention of restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990); *see Barbee v. Wal-*

16

*Mart Stores, Inc.*, No. W2003-0017-COA-R3-CV, 2004 WL 239763, at *5 (Tenn. Ct. App. Feb. 9, 2004).

Per the allegations in plaintiff's complaint, it is undisputed that of the named defendants, only Agent Durnin is alleged to have restrained plaintiff. Defendants point out that while plaintiff alleges numerous actions taken by Agent Durnin in connection with plaintiff's arrest and transport to the police station, plaintiff has not made any factual allegation regarding any actions taken by Mr. Carter and Supervisors Perryman and Collins in regard to plaintiff's arrest and detention [Doc. 1, ¶¶ 10-38]. Therefore, as there are no allegations that Mr. Carter or Supervisors Perryman and Collins restrained plaintiff against his will, plaintiff cannot show that these defendants engaged in any "detention or restraint" of plaintiff and his claims for false imprisonment against Mr. Carter and Supervisors Perryman and Collins, in their individual capacities, will be **DISMISSED**.

### b. Negligence and Negligent Supervision

Section 9-8-307(h) of the Tennessee Code Annotated states as follows:

> State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. For purposes of this chapter, "state officer" or "employee" has the meaning set forth in § 8-42-101(3).

Tenn. Code Ann. § 9-8-307(h). Defendants move for dismissal of plaintiff's negligence and negligent supervision claims against the individual defendants because pursuant to Tenn. Code Ann. § 9-8-307(h), these defendants have absolute immunity for claims of negligence.

As noted above, Agent Durnin, Mr. Carter, and Supervisors Collins and Perryman are employees of the TWRA and are state officials. *See* Tenn. Code Ann. § 8-42-101(3). In his response, plaintiff has not addressed the immunity of state officials under state law but asserts that the individual defendants were acting outside of the scope of their employment.

Given the law stated above, the Court finds that as state officials, the individual defendants are entitled to immunity under state law. Tenn. Code Ann. § 9-8-307(h). In addition, despite plaintiff's argument that these defendants were acting outside the scope of their employment, the allegations of plaintiff's complaint contradict this statement because plaintiff has alleged that "the individual Defendants were acting in the scope of their employment" [Doc. 1, p. 2]. Furthermore, as discussed above, plaintiff's argument that defendants' roles will be ascertained by the trier of fact and therefore are not subject to dismissal, is not a sufficient argument to defeat defendants' request for dismissal. Accordingly, upon review, and under the plain language of Tenn. Code Ann. § 9-8-307(h), Agent Durnin, Mr. Carter, and Supervisors Collins and Perryman, sued for negligence and negligent supervision in their individual capacities, are entitled to absolute immunity for such claims and the claims will be **DISMISSED**.

### c. Assault

Defendants have also moved for dismissal of plaintiff's assault claim against Mr. Carter and Supervisors Collins and Perryman because the complaint contains no allegations that these defendants were personally involved in the alleged assault. In response, plaintiff states that he has not alleged that these defendants were present during the assault and

18

therefore the complaint does not "implicate" these defendants "as it relates to the assault." [Doc. 7, p. 5]. Accordingly, it appears to the Court that plaintiff has acknowledged that his complaint does not allege an assault claim against Mr. Carter and Supervisors Collins and Perryman. However, in an abundance of caution, the Court has reviewed the allegations of the complaint [Doc. 1, ¶¶ 32, 32, 80], and agrees with defendants that in contrast to the allegations contained in the complaint against Agent Durnin, the complaint contains no factual allegations that Mr. Carter or Supervisors Collins and Perryman were involved in plaintiff's arrest. Accordingly, these claims will be **DISMISSED** as well.

IV.    **Conclusion**

For the reasons given above, defendants' partial Motion to Dismiss [Doc. 2] is **GRANTED** and the following claims will be **DISMISSED**: (1) plaintiff's official capacity claims, pursuant to 42 U.S.C. § 1983, against all defendants; (2) plaintiff's individual capacity claims, pursuant to 42 U.S.C. § 1983, against Ed Carter, Willard Perryman and Andy Collins; (3) plaintiff's claims under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101, *et seq.*; (4) plaintiff's official capacity state law claims against all defendants; (5) plaintiff's false imprisonment claims, under state law, against Ed Carter, Willard Perryman, and Andy Collins; (6) plaintiff's negligence and negligent supervision claims, under state law, against all individual defendants; and (7) plaintiff's assault claims, under state law, against Ed Carter, Willard Perryman, and Andy Collins. The following claims are not dismissed: (1) plaintiff's individual capacity claims against Joe Durnin for a general civil rights violation and for false arrest, both pursuant to 42 U.S.C. §

1983; (2) plaintiff's individual capacity state law claim for false imprisonment against Joe Durnin; and (3) plaintiff's individual capacity state law claim for assault against Joe Durnin.

An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>UNITED STATES DISTRICT JUDGE